# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

MICHAEL PAT THOMPSON,                )
                                     )
                    Petitioner,      )
v.                                   )        Case No. CIV-09-1136-M
                                     )
DAVID PARKER, WARDEN,                )
                                     )
                    Respondent.      )

## REPORT AND RECOMMENDATION

Petitioner, Michael Pat Thompson, appearing with counsel, has filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 [Doc. #1] and a Brief in Support [Doc. #7] challenging the constitutionality of his state court conviction. Respondent has filed a Response [Doc. #13], and Petitioner has replied [Doc. #21]. For the reasons set forth below, it is recommended that the Petition be denied.

## I. Procedural History

Petitioner was in a relationship with the mother of two minor female children, B.H. and L.R. The Information, as amended, charged Petitioner with two counts of sexually abusing the minor child, B.H., and two counts of sexually abusing the minor child, L.R.[1] Petitioner was convicted, after jury trial, of four counts of Sexual Abuse of a Minor, Case No. CF-2003-5656, District Court of Tulsa County, State of Oklahoma. The jury recommended punishment of life imprisonment on each count and payment of a $5000 fine

---

[1]The Amended Information further charged the victims' mother with one count of permitting sexual abuse of the minor child, L.R. *See* Original Record (OR) [Doc. #14] at 26-27, Amended Information. Following Petitioner's trial, the mother entered a no contest plea. *See id.* at 16, Docket, Case No. CF-2003-5656 (docket entry, October 24, 2005).

on each count.  The trial court sentenced Petitioner accordingly and ordered the sentences on each count to run consecutively.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA).  Represented by the same attorney who represented him at trial, Petitioner raised the following claims: (1) the evidence was insufficient at preliminary hearing to support a probable cause determination and the evidence at trial was insufficient to support the convictions; (2) other crimes evidence was admitted without proper notice; (3) the State violated the discovery code depriving Petitioner the opportunity to prepare for trial and the expert testimony of State's witness Jaime Vogt prejudiced Petitioner; (4) the State violated the discovery code by failing to provide adequate summaries of the testimony of Jaime Vogt and exculpatory evidence related to a witness named "A"; and (5) Petitioner received an excessive sentence.  The OCCA rejected all claims and affirmed Petitioner's conviction and sentence.  *See* Response, Exhibit 3, OCCA Summary Opinion.  Petitioner filed a Petition for Rehearing and the OCCA denied the Petition on April 18, 2007.  *See* Petition [Doc. #1], Exhibit 2, OCCA Order Denying Petition for Rehearing.

Petitioner, represented by new counsel, then filed an application for post-conviction relief raising the following claims: (1) the trial court's failure to instruct the jury about an election of offenses or the requirement for unanimity beyond a reasonable doubt as to a particular act rendered his trial fundamentally unfair in violation of the Due Process Clause of the Fourteenth Amendment; (2) the prosecutor knowingly introduced false testimony depriving Petitioner of a fundamentally fair trial in violation of the Due Process Clause of

the Fourteenth Amendment; (3) the victims' testimony was so uncorroborated and unreliable as to render the evidence insufficient to support the conviction; (4) the trial court's giving of Instruction No. 18 denied Petitioner due process of law; (5) the trial court erred in overruling Petitioner's discovery motions, and counsel was ineffective at trial and on direct appeal for not raising further challenges related to the discovery motions; (6) failure to instruct the jury on Oklahoma's 85% Rule requires a modification of Petitioner's sentence; and (7) Petitioner's counsel at trial and on direct appeal was ineffective as related to the following: (a) the testimony of Lora Zumwalt should not have been admitted; (b) the testimony of Jaime Vogt should not have been admitted; and (c) the prosecutor impermissibly diluted the "proof beyond a reasonable doubt" standard. The district court denied Petitioner's application for post-conviction relief, and the OCCA affirmed the district court's denial. *See* Response, Exhibit 4, Brief of Petitioner; Exhibit 5, OCCA Order Affirming Denial of Application for Post-Conviction Relief (OCCA Post-Conviction Order).

## II.    **Claims for Federal Habeas Corpus Relief**

In his habeas petition, Petitioner raises the same claims for relief as those raised in post-conviction proceedings. As to the claim raised in Ground Three challenging the sufficiency of the evidence, Petitioner raised this claim both on direct appeal of his conviction and again in post-conviction proceedings. Petitioner's Grounds for Relief are as follows: (1) Petitioner's due process rights were violated based on the trial court's failure to instruct as to an election of offenses or the unanimity beyond a reasonable doubt requirement of a particular act; (2) Petitioner's due process rights were violated as a result of the

3

prosecutor knowingly presenting false and/or misleading testimony; (3) the evidence was insufficient to support the conviction in violation of Petitioner's due process rights; (4) Instruction No. 18 violated Petitioner's due process rights; (5) the trial court erred in overruling Petitioner's discovery motions, and appellate counsel was ineffective for not raising this issue on direct appeal; (6) Petitioner is entitled to a modification of his sentence due to the trial court's failure to instruct the jury regarding Oklahoma's 85% Rule, and appellate counsel was ineffective for not raising this claim on direct appeal; and (7) Petitioner was denied his Sixth Amendment right to the effective assistance of trial and appellate counsel related to the following: (a) the testimony of Lora Zumwalt should not have been admitted; (b) the testimony of Jaime Vogt should not have been admitted; and (c) the prosecutor impermissibly diluted the "proof beyond a reasonable doubt" standard.

Respondent has addressed the merits of the claims raised in Grounds Three, Five and Seven. Respondent contends the claims raised in Grounds One, Two, Four and Six are procedurally barred.[2]

## III.   **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) standards of review apply to those grounds for relief raised by Petitioner that were adjudicated on the merits by the state courts. *See Turrentine v. Mullin*, 390 F.3d 1181, 1188 (10th Cir. 2004).

---

[2]As discussed *supra*, despite the assertion of the defense of procedural bar, Respondent has addressed the merits of the claim raised in Ground Four of the Petition in the context of addressing Petitioner's allegations of ineffective assistance of counsel.

Under AEDPA, this Court may grant Petitioner habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result – not its rationale – is 'legally or factually unreasonable'").

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be "diametrically different," "opposite in character or nature," or "mutually opposed" to the Supreme Court decision itself. *Id*. at 406. A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. **"**AEDPA's conception of objective unreasonableness lies 'somewhere between *clearly* erroneous and unreasonable to all reasonable jurists.'" *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (*quoting Maynard v. Boone*, 468 F.3d 665,

670 (10th Cir. 2006)). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" *Id.* (*quoting Maynard*, 468 F.3d at 671)).

## IV. Analysis

### A. Claim Raised on Direct Appeal of Petitioner's Conviction – Sufficiency of the Evidence (Ground Three of the Petition)

In this habeas action Petitioner brings only one of the multiple claims brought on direct appeal of his conviction. In Ground Three, Petitioner contends that the evidence adduced at trial was insufficient to support his conviction. Specifically, Petitioner relies on an Investigative Report made by Detective Debbie Erfurdt on October 21, 2003, which he contends demonstrates the lack of corroboration of the victims' testimony. In addition, Petitioner contends the trial testimony of L.R. and B.H. is not credible, characterizing the testimony as improbable and contradictory in nature. Petitioner, represented by counsel, does not point to any specific testimony in support of this claim.

The Investigative Report details interviews with the victims as well as various persons having knowledge of circumstances related to the incidents of sexual abuse.[3] The Report concludes:

> At this time in the investigation, I am unable to locate evidence to corroborate [B.H.'s] disclosure of abuse. I have possible witnesses to corroborate that [L.R.] was molested, but [L.R.] is denying that she has ever been molested.

---

[3]The Investigative Report is included in the record as part of Petitioner's evidentiary submissions related to his Request for Expansion of the Record and for Evidentiary Hearing [Doc. #5]. Petitioner submits the original record of his state post-conviction proceedings in support of his Request. *See* Notice of Conventional Filing [Doc. #6]. The Court will refer to this record as the Post-Conviction Record.

> I have contacted Dana Bogie with the District Attorney's Office to set up an appointment to determine if there is enough evidence at this time to file charges against the suspect.

*See* Post-Conviction Record, Vol. II at 278, Investigative Report of Detective Erfurdt. The "findings" in the Investigative Report have no bearing as to the sufficiency of the evidence adduced at trial. Detective Erfurdt did not testify at trial nor was her Investigative Report – comprised of hearsay statements -- introduced as evidence at trial. Any challenge to the sufficiency of the evidence based on the statements contained in the Investigative Report lacks merit.

Petitioner's claim that the victims' testimony is unreliable and uncorroborated also fails to establish any constitutional error regarding the sufficiency of the evidence. As the Tenth Circuit has held "[n]o direct Supreme Court precedent requires corroboration of child witness testimony." *Parker v. Scott*, 394 F.3d 1302, 1314 (10th Cir. 2005). In *Parker*, the petitioner was convicted of child sexual abuse and, like Petitioner here, argued that the child's testimony at trial was "so inconsistent that, absent corroboration, it denied him due process." *Id.* at 1314. The Tenth Circuit reviewed the petitioner's habeas claim under the sufficiency of the evidence standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Id.*

On direct appeal of Petitioner's conviction, the OCCA rejected Petitioner's sufficiency of the evidence challenge on the merits and applied the *Jackson* standard.[4] Petitioner is entitled to relief only if the OCCA's rejection of his insufficiency of the evidence argument on direct appeal of his conviction was contrary to or an unreasonable application of *Jackson*.

"[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction [is] . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318. In conducting this inquiry, the court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id*. at 318-319 (citation omitted). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (citation omitted). As the Supreme Court has explained, "[t]his familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*.

Under Oklahoma law, the elements of the offense of sexual abuse of a child are: (1) a person responsible for the child's health, safety or welfare; (2) willfully or maliciously; (3)

---

[4]The OCCA did not directly cite to the Supreme Court's decision in *Jackson*. Instead, the OCCA cited its own precedent which, in turn, utilized the *Jackson* standard. *See* OCCA Summary Opinion at 2 n. 2 (*citing Peninger v. State*, 721 P.2d 1338, 1341 (Okla. Crim. App. 1986)).

engaged in; (4) sexual abuse of a child; (5) under the age of eighteen. *See* Oklahoma Uniform Jury Instructions - Criminal ("OUJI-CR") (2d ed.), Instruction No. 4-39, Sexual Abuse/Exploitation of Children – Elements. In this case, the particular allegations of sexual abuse involved lewd or indecent acts with a child. A lewd or indecent act occurs when a defendant "[i]n any manner lewdly or lasciviously look[s] upon, touch[es], maul[s], or feel[s] the body or private parts of any child under sixteen (16) years of age in any indecent manner or in any manner relating to sexual matters or sexual interest." Okla. Stat. tit. 21, § 1123(A)(4). *See also* Original Record at 155 (Jury Instruction No. 24).

Petitioner does not challenge the evidence as to any particular element of the offense but rather generally contends the testimony of the victims and other witnesses was not credible. As the Tenth Circuit noted in *Parker*, "it is axiomatic that the responsibility of adjudging the child's credibility belonged to the trier of fact, not to [the Court]." *Parker*, 394 F.3d at 1315 (*citing Jackson*, 443 U.S. at 1319). As in *Parker*, this Court does not have "the benefit of observing the witnesses in the crucible of the courtroom during direct and cross-examination and thus are not in a position to second-guess the jury's credibility determinations." *Id*. As the Court stated in *Parker*:

> To the extent Parker claims that the child gave inconsistent statements at trial and in the other interviews, his counsel had the opportunity to cross-examine the child and the other witnesses to expose the alleged inconsistencies. . . .The jury was in a position to credit or discount the child's testimony and weigh the inconsistencies in light of her age and the passage of time. Parker's claims about inconsistency are primarily based on the jury's acceptance of his and the other defense witnesses' testimony over the child's. That determination, however, is distinctly within the realm of the jury, which we cannot enter on AEDPA review.

*Id.* at 1315. Here, as in *Parker*, whether to discount the victims' testimony as unreliable or uncorroborated was an issue for the trier of fact and not subject to review by this Court.

Leaving credibility determinations to the trier of fact, this Court's review of the record shows the evidence at trial was clearly sufficient to sustain Petitioner's conviction. B.H. testified about an incident in September 2003, when she was riding in the car with Petitioner. Petitioner unbuttoned her pants, put his finger in her vagina and also touched her breasts. *See* Original Record [Doc. ##14, 23], Transcript of Jury Trial (Tr.) Vol. III at 436. She testified this was not the first time Petitioner had molested her. She then described a similar incident that occurred during the previous school year. She was again in the car and Petitioner unbuttoned her pants, touched inside her vagina and rubbed her chest and breast. Tr. Vol. III at 443-444. She testified Petitioner's six-year-old son was in the back seat of the car, riding in a car seat. The son saw Petitioner touching B.H. and asked Petitioner what he was doing. According to B.H., Petitioner told his son he was just rubbing her. *Id.*[5]

L.R. also testified that Petitioner had molested her. In the fall of 1999, during her sixth grade year of school, she remembers a time when she had fallen asleep in Petitioner's lap. She woke up to Petitioner rubbing on her legs. He put his fingers inside her vagina and

---

[5]The son also testified at trial. He did not remember his father ever touching B.H., asking his father why he was touching B.H. or hearing his father say he was "just rubbing" B.H. Tr. Vol. IV at 726-727.

felt her breasts. Tr. Vol. V at 833-836, 873.[6]  L.R. testified there were other incidents as well. Tr. Vol. V at 879.

Testimony of a friend, B.G., corroborated the victims' allegations of molestation. B.G. frequently spent the night at the victims' house.  On more than one occasion, she observed Petitioner in or near the victims' bedrooms in the middle of the night.  On one such occasion, she saw Petitioner come out from L.R.'s closet.  On another occasion, she heard Petitioner coming up the stairs.  She also described an incident that occurred in L.R.'s bedroom. B.G. was sleeping in the same bed with L.R.  B.H. was sleeping in L.R.'s bedroom on the floor.  B.G. watched Petitioner approach L.R. and rub his hands up and down L.R. while L.R. was asleep.  She tried waking L.R.  When L.R. finally did wake, Petitioner was crawling on his hands and knees on the floor.  After he left the room, L.R. was afraid for B.H. and told her to get in bed with them.  *See* Tr. Vol. IV at 749-763 (B.G.'s testimony); Tr. Vol. V at 844-849 (L.R.'s testimony); and Tr. Vol. III at 421 (B.H.'s testimony).[7]

Another friend of the victims, M.B., testified about unusual behavior of Petitioner she observed while at the victims' home.  M.B. testified that on one occasion, during the early

---

[6]L.R. testified she told her mother about this incident but only related that Petitioner had been "bothering her."  L.R. testified her mother knew what she meant by this but only wanted to know if L.R. had told anyone else about it.  Tr. Vol. V at 839-841.  L.R.'s mother testified that L.R. had told her Petitioner had put his hand on her thigh.  Tr. Vol. VI at 1118.  When L.R.'s mother asked Petitioner about it, Petitioner told her that his arm must have fallen off the arm rest of the chair onto L.R.'s thigh.  *Id.*

[7]The testimony also established that the victims' mother was told about the incident in L.R.'s bedroom when B.G. spent the night.  Tr. Vol. IV at 763-768 (B.G.'s testimony); Tr. Vol. VI at 1112-1114 (mother's testimony); Tr. Vol. V at 842-848 (L.R.'s testimony).  After the incident, L.R. was not allowed to remain friends with B.G.  Tr. Vol. IV at 772; Vol. V at 849.

morning hours, she observed Petitioner exiting the closet of B.H.'s bedroom.  Tr. Vol. IV at

694-695.  She also testified about an occasion where she observed Petitioner walking up the

stairs in the middle of the night.  *Id.* at 697-699.[8]  On another occasion, she saw Petitioner

exit from L.R.'s bedroom at night.  *Id.* at 699.  When he exited the room he put a trash bag

that L.R. had placed in front of her bedroom door back in position.  *Id.* at 699-700.  She also

testified about a time when Petitioner came into B.H.'s bedroom at night, thought M.B. was

B.H., and tried to wake her up.  *Id* at 700-701.

Other conduct corroborated the victims' testimony.  Both victims testified that

Petitioner frequently took them shopping and bought them clothes and jewelry. These

shopping trips included purchases at Victoria's Secret to buy bras and underwear.  Tr. Vol.

III at 445-446 (B.H.'s Testimony); Vol. V at 864 (L.R.'s testimony). Lora Zumwalt, an

employee of the Oklahoma Department of Human Services (DHS) who investigated the

allegations made against Petitioner, described this type of behavior as "grooming" whereby

perpetrators "attempt to gain confidence of their victim by either being their friend or buying

them things, clothes, food, whatever.  They'll buy them things to gain their trust in order to

perpetrate them."  Tr. Vol. IV at 637.

In addition, testimony established that beginning in January or February of 2003, B.H.

did not want to live at home any longer because she did not feel safe and preferred living

with her aunt.  Tr. Vol. III at 427 (B.H. Testimony); Tr. Vol VI at 1272-1273 (Aunt's

---

[8]Only the victims' bedrooms were located in the upstairs of the house.

Testimony).  Testimony also established that L.R. would ask B.H. to sleep with her, barricade her door, asked her mother to put a lock on her bedroom door, and made a list of rules to keep Petitioner at a distance from her, particularly when her mother was not at home. Tr. Vol. III at 474-475; VI at 1219, 1164-1165, 1225.

On habeas review, this evidence must be considered in the light most favorable to the prosecution so as to preserve the factfinder's role as weigher of the evidence. *Jackson*, 443 U.S. at 319.  In addition, because the OCCA reviewed the merits of the claim applying the *Jackson* standard, relief is available only if the OCCA's determination is contrary to or an unreasonable application of *Jackson*.  Based on review of the entire record and application of the proper standards, the Court concludes the evidence is constitutionally sufficient and the OCCA's determination is not contrary to or an unreasonable application of *Jackson*. Accordingly, Ground Three of the Petition should be denied.

### B.    Claims Raised in Post-Conviction Proceedings

### 1.    Procedural Bar (Grounds One, Two, Four and Six)

Respondent contends Petitioner's claims raised in Grounds One, Two, Four and Six of the Petition -- claims raised for the first time in state post-conviction proceedings – are procedurally defaulted.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of

the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").

In affirming the denial of post-conviction relief, the OCCA began by noting that its "consideration of claims on post-conviction is strictly limited by the provisions of the Uniform Post-Conviction Procedure Act." OCCA Post-Conviction Order at 2, (*citing* Okla. Stat. tit. 22, §§ 1080-1089). The OCCA further noted that a petitioner "must raise all grounds for relief at trial or in his direct appeal unless he shows sufficient reason why a ground for relief was not previously asserted or that a ground for relief was inadequately raised in a prior application." *Id.* at 3 (citations omitted).[9]

The OCCA then addressed Petitioner's argument that "there is no procedural bar where a petitioner had the same counsel at trial and on appeal, or where the ineffectiveness claim could not be resolved solely on the basis of the record." *Id.* Characterizing Petitioner's argument as "a little overly broad," the OCCA stated that it "no longer appl[ies]

_____

[9]Section 1086 provides:

> All grounds for relief available to an applicant under this act must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the prior application.

Okla. Stat. tit. 22, § 1086. The Tenth Circuit has deemed § 1086 an independent and adequate state procedural bar. *See Ellis v. Hargett*, 302 F.3d 1182, 1186 (10th Cir. 2002) (holding Okla. Stat. tit. 22, § 1086 "is an independent and adequate state ground for denying habeas relief").

a procedural bar *to claims of ineffective assistance of counsel*, when appellate counsel and trial counsel [are] the same." *Id*. (emphasis added; citation omitted).

The OCCA applied a procedural bar to Petitioner's substantive claims, but then proceeded to review the merits of the claims raised in Grounds One, Two, Four, Five and Six under the prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984) in the context of Petitioner's ineffective assistance of counsel claims. *See id*. at 4-6.

Petitioner's habeas briefing before this Court is almost identical to the briefing submitted as part of his state post-conviction proceedings. His briefing contains no express claim that any procedural default of his claims in state court should be excused due to ineffective assistance of counsel. With respect to Grounds One, Two, Four, Five and Six, he does include statements in the Petition (mirroring statements set forth in his post-conviction briefing) to the effect that he does not know why his counsel did not raise each of the respective issues either at trial or on direct appeal. He does not raise any stand-alone claim of ineffective assistance of counsel based on counsel's failure to pursue the claims raised in Grounds One, Two, Four, Five and Six at trial and/or on direct appeal. However, as to Grounds Five and Six, he includes in the statement of the claim an allegation that counsel was ineffective for not raising the claim on direct appeal.

It appears, therefore, that in both state post-conviction proceedings and before this Court, Petitioner claims ineffective assistance of counsel as cause to excuse a procedural

default of the claims raised in Grounds One, Two, Four, Five and Six and that the OCCA analyzed whether counsel was ineffective for this purpose.[10]

Accordingly, this Court, proceeds to determine whether Petitioner has demonstrated that alleged ineffective assistance of counsel is sufficient cause to overcome the procedural default of the substantive claims raised in Grounds One, Two, Four and Six.[11] In reviewing Petitioner's ineffective assistance of counsel claims, the OCCA applied the familiar standards of *Strickland v. Washington*, and determined that Petitioner's trial and/or appellate counsel did not render ineffective assistance. Therefore, to overcome the procedural default, Petitioner must demonstrate the OCCA's analysis of his claims is contrary to or an unreasonable application of *Strickland*. [12]

---

[10]Respondent contends Petitioner asserts "no cause in his habeas petition for failing to raise these claims on direct appeal, he merely indicates he does not know why they were not raised." *See* Response at 15. Respondent further contends that because Petitioner is represented by counsel he is not entitled to a liberal construction of his pleadings. *Id.* Petitioner states in his Petition, as he did in post-conviction proceedings, that he does not know why *his counsel* did not raise these issues. While Respondent is correct that Petitioner is not entitled to a liberal construction of his pleadings and while Petitioner could have better articulated his position, this Court finds Petitioner has asserted ineffective assistance of counsel as cause to overcome a procedural default of his substantive claims raised in Grounds One, Two, Four and Six. In so finding, the Court notes as significant the fact that the OCCA construed his post-conviction pleadings in this same manner and proceeded to review his claims in the context of determining whether Petitioner could demonstrate ineffective assistance of counsel.

[11]In Ground Five of the Petition, Petitioner brings a claim of ineffective assistance of counsel (raising issues related to pre-trial discovery motions). Respondent does not claim procedural default of this claim. The claim, therefore, is addressed separately.

[12]As noted, a procedurally defaulted claim may also be considered on federal habeas review under the fundamental miscarriage of justice exception which requires a petitioner to supplement his constitutional claim with a colorable showing of factual innocence. *Herrera v. Collins*, 506 U.S. 390, 404 (1993) (citation omitted). Petitioner has not invoked the fundamental miscarriage of justice
(continued...)

## 2. Ineffective Assistance of Counsel as Cause to Overcome the Procedural Default of Claims Raised in Grounds One, Two, Four and Six

Pursuant to *Strickland*, the Court must determine whether counsel's performance was constitutionally deficient, and whether the deficient performance prejudiced the defense, depriving Petitioner of a fair proceeding with a reliable result. *Strickland*, 466 U.S. at 687; s*ee also Snow v. Sirmons*, 474 F.3d 693, 719 (10th Cir. 2007). Under the deficient performance prong, Petitioner must show that his counsel's performance "fell below an objective standard of reasonableness" in that it was outside "the range of competence demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687-88. Under the prejudice prong, Petitioner must show that "but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different." *Id.* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sallahdin v. Gibson*, 275 F.3d 1211, 1235 (10th Cir. 2002).

### a. Jury Instruction Error – Election of Offense (Ground One)

Petitioner contends his due process rights were violated because the jury was not instructed that Petitioner must be found guilty of specific acts of child molestation with respect to the charges involving B.H. alleged to have occurred between June 1, 2003 and

---

[12](...continued)
exception. The Court's analysis, therefore, focuses on whether Petitioner has demonstrated ineffective assistance of counsel as cause to overcome the procedural default of his substantive claims.

September 1, 2003. He contends that the admission of testimony from B.H. that Defendant had molested her on other occasions allowed the jury to find him "guilty of being a child molester" rather than requiring the state to prove specific acts of child molestation and that the jury should have been required to reach a unanimous verdict about the specific acts for which he was convicted. To support this claim, he relies on Oklahoma law requiring that a defendant be found guilty of specific acts. *See, e.g., Cody v. State*, 361 P.2d 307 (Okla. Crim. App. 1961).

In affirming the district court's denial of post-conviction relief, the OCCA adhered to the finding of the district court that a combination of jury instructions – Instruction numbers 3, 4, 17 and 24, "instructed his jury that Petitioner was only on trial for the two specific incidents charged in the Information and of which a witness testified." *See* OCCA Order Affirming Denial of Post-Conviction Relief at 4.

Instruction No. 3 provides, in pertinent part:

The defendant, Michael Pat Thompson, is charged in the Information in Count 1 with Sexually Abusing a Minor Child, [B.H.], between 6/1/2003 and 9/1/2003, in the city of Broken Arrow, Tulsa County, Oklahoma; in Count 2 with Sexually Abusing a Minor Child, [B.H.], between 6/1/2003 and 9/1/2003, in the city of Broken Arrow, Tulsa County, Oklahoma. . . .

*See* OR at 134, Instruction No. 3, OUJI-CR-3. Instruction No. 4 instructed the jury as to the presumption of innocence, the State's burden of proof and the requirement that the State meet its burden of proof as to each element of the crime charged. *See* OR at 135, Instruction No. 4, OUJI-CR 10-4. Instruction No. 17 provided as follows:

The defendant is on trial in this case only for the offenses charged in the Information. Evidence has been received that the defendant has allegedly committed acts other than those charged in the Information. You may not consider this evidence as proof of the guilt or innocence of the defendant of the specific offenses charged in the Information. This evidence has been received solely on the issue of the witnesses' recollection of events. This evidence is to be considered by you only for the limited purpose for which it was received.

*See* OR at 148, Instruction No. 17, OUJI-CR 9-9. And, as previously set forth herein in relation to Petitioner's third ground for relief challenging the sufficiency of the evidence, Instruction No. 24 set forth the elements of the crime for sexual abuse of a child. *See* OR at 155, OUJI-CR 4-39. Based on the combination of these instructions, the OCCA concluded Petitioner could not demonstrate prejudice resulting from counsel's failure to request an instruction regarding an election of offenses or that the jury reach a unanimous decision about the specific behavior for which Petitioner was convicted. *See* OCCA Summary Opinion at 4.

Petitioner wholly ignores these instructions in claiming prejudicial error due to the conduct of counsel. Yet, as the OCCA found, these instructions adequately apprised the jury of the specific conduct with which Petitioner was charged and the duty of the State to prove each element of the crime beyond a reasonable doubt. Petitioner has failed to demonstrate prejudice resulting from any alleged deficient performance of counsel. The OCCA's adjudication of this issue is not contrary to or an unreasonable application of *Strickland*. As such, Petitioner cannot overcome the procedural default of the claim raised in Ground One of the Petition.

### b. Prosecutorial Misconduct – Knowingly Presenting False/Misleading Testimony (Ground Two)

In Ground Two, Petitioner claims the prosecutor knowingly presented false testimony. At trial, L.R. testified about an incident that occurred in October 1999 when Petitioner molested her. L.R. was eleven years old and in the sixth grade. Tr. Vol. V at 833-838. On direct examination, the prosecutor asked L.R. if she told anyone about this incident before reporting the crime to police. L.R. testified that when she was in the ninth grade, she told her boyfriend, D.M. L.R. further testified this would have been two or three years after the incident occurred. Tr. Vol. V at 850-851.

Petitioner contends the prosecutor knew or should have known this statement was false. In support, he relies on a statement D.M. made to police that L.R. never disclosed to him that Petitioner had molested her and a signed statement by D.M. to the same effect. *See* Post-Conviction Record, Vol. II, Statement of D.M. at 274. In addition, he relies on a statement contained in a police report made by D.M.'s father wherein the father stated that D.M. told him "it never happened." *See id*. at 264.[13]

Petitioner fails to demonstrate how the statements of these two persons make L.R.'s testimony false. Each person conveyed his or her version of events, including what information was shared and with whom it was shared. Whether to believe L.R. about what

---

[13]Neither D.M. nor his father testified at trial. Petitioner further alleges trial counsel was ineffective for failing to have these two witnesses testify. The purported testimony of the witnesses had limited impeachment value. Given the weight of the evidence presented in the record, Petitioner fails to demonstrate prejudice resulting from counsel's failure to present testimony from these witnesses.

she did or did not tell her boyfriend, or whether to believe the statements of D.M. and his father, constitute issues of weight and credibility, not the knowing submission of false testimony. As the OCCA found: "Petitioner does not refute the District Court's finding that [L.R.] had previously given a statement that was consistent with her trial testimony, and that unsworn statements from two other individuals do not make her testimony false." *See* OCCA Post-Conviction Order at 4.

Moreover, to establish counsel's ineffectiveness for failing to raise this issue at trial or on direct appeal, Petitioner would have to demonstrate a reasonable probability that the result of the proceedings would have been different had the prosecution not introduced the allegedly "false" testimony from L.R. that she told her boyfriend about the October incident of molestation. Petitioner has made no such demonstration, and the Court notes the testimony was not elaborate in this regard.[14] The OCCA's determination of this issue is not contrary to or an unreasonable application of *Strickland*. Accordingly, Petitioner cannot overcome the procedural default of the claim raised in Ground Two of the Petition.

### c. <u>Jury Instruction Error – Instruction No. 18/ Inconsistent Statements (Ground Four)</u>

Petitioner further claims ineffective assistance of counsel based on counsel's failure to object to Instruction No. 18 at trial and failure to challenge the giving of the instruction

---

[14]L.R. was asked whether she told anyone about the October 1999 incident. L.R. testified: "When I got older, I told my boyfriend when I was in the ninth grade." Tr. Vol. V at 851. She identified her boyfriend as D.M. *Id*. She said she told D.M. two or three years after the incident. *Id*. No other testimony regarding her communications with D.M. was given.

on direct appeal. Instruction No. 18 addressees a witness's inconsistent statements and provides:

> Evidence has been presented that on some prior occasion [B.H.] and [L.R.] made statements inconsistent with their testimony in this case. This evidence is called impeachment evidence and it is offered to show that the witness's testimony is not believable or truthful. If you find that a statement was made, you may consider this impeachment evidence in determining what weight and credit to give the testimony of those witnesses. You may not consider this impeachment evidence as proof of innocence or guilt. You may consider this impeachment evidence only to the extent that you determine it affects the believability of the witnesses, if at all.

OR at 149, Instruction No. 18, OUJI-CR-9-20. As Respondent points out, this instruction is taken verbatim from the Oklahoma Uniform Criminal Jury Instructions.

Petitioner specifically challenges the sentence of the Instruction which reads: "You may not consider this impeachment evidence as proof of innocence or guilt." Petitioner extracts from this sentence the argument that "this instruction told the jury that even if they found that the complaining witnesses in this case were not believable, the jury could not use that finding to determine whether [Petitioner] was guilty." *See* Petitioner's Brief at 28. However, contrary to Petitioner's contention, the jury was expressly instructed that it was their duty to determine the credibility of the witnesses' testimony and the weight to be given the testimony of each witness.[15]

_____

[15]Instruction No. 8 provides:

It is your responsibility to determine the credibility of each witness and the weight to be given the testimony of each witness. In determining such weight or credibility, you may properly consider: the interest, if any, which the witness may have in the result of the trial, the relation of the witness to the parties; the bias or prejudice of the

(continued...)

It appears the crux of Petitioner's claim is that the jury should have been allowed to consider the impeachment evidence as substantive evidence. Petitioner's argument is disingenuous. As the OCCA found, "inconsistent statements made during the investigation of a crime may only be used for impeachment," *see* OCCA Post-Conviction Order at 5. *See also United States v. Carter*, 973 F.2d 1509, 1512 (10th Cir. 1992) ("A witness' prior statements are admissible only to impeach or discredit the witness and are not competent substantive evidence of the facts to which the former statements relate.") (citation omitted). Petitioner fails to demonstrate the OCCA's finding is erroneous.[16]

Further, Petitioner contends the instruction confused the jury. Petitioner states:

While Petitioner is relatively sure that there may be some subtle legal destruction [sic] between evidence for "impeachment purposes" and evidence for "guilt/innocence purposes," Petitioner is more than sure that the difference

_____

[15](...continued)

witness, if any has been apparent, the candor, fairness, intelligence, and demeanor of the witness; the ability of the witness to remember and relate past occurrences, the means of observation, and the opportunity of knowing the matters about which the witness has testified. From all the facts and circumstances appearing in evidence and coming to your observation during the trial, aided by the knowledge which you each possess in common with other persons, you will reach your conclusions. You should not let sympathy, sentiment or prejudice enter into your deliberations, but should discharge your duties as jurors impartially, conscientiously, and faithfully under your oath and return such verdict as the evidence warrants when measured by these instructions.

*See* OR at 139, OUJI-CR-10-8.

[16]Although Oklahoma law provides that inconsistent statements may, in certain circumstances, be used for substantive purposes, *see* Okla. Stat. tit. 12, § 2801(B)(1)(a); *Omalza v. State*, 911 P.2d 286, 300 (Okla. Crim. App. 1995), Petitioner does not identify any particular impeachment evidence in support of this claim, demonstrate that the conditions of § 2801(B)(1)(a) apply, or otherwise demonstrate that the inconsistent statements of the witnesses should have been considered as substantive evidence.

> is lost on the average layperson (juror). The instructions did not provide any
> guidance as to how to use this evidence for one purpose but not for another.

Petitioner's Brief at 28. To the contrary, the Tenth Circuit has found this identical instruction to be "a thorough yet easy-to-understand limiting instruction to the jury" as to the proper use of impeachment evidence. *Christopher v. Boone*, 49 Fed. Appx. 257, 261 (10th Cir. Oct. 21, 2002) (unpublished op.).

In sum, Petitioner has failed to demonstrate any impropriety in the giving of Instruction No. 18. As such, he has not shown deficient performance by counsel or a reasonable probability that the result of the trial proceedings would have been different but for counsel's failure to challenge the instruction. The OCCA's determination that counsel was not ineffective for failing to challenge the instruction at trial or on direct appeal is not contrary to or an unreasonable application of *Strickland*. Petitioner has failed to overcome the procedural default of this claim.

### d. Failure to Instruct the Jury on Oklahoma's 85% Rule (Ground Six)

Petitioner contends the jury should have been instructed on Oklahoma's 85% Rule and the failure to so instruct the jury required a modification of his sentence. He further claims his appellate counsel was ineffective for not raising this claim on direct appeal.

Under Oklahoma law, a person who has committed certain enumerated statutory offenses must serve 85% percent of his sentence before being eligible to be considered for

parole (the 85% Rule).[17]  Petitioner's convictions for sexual abuse of a minor fall within the statute as one of the enumerated offenses.  *See* Okla. Stat. tit. 21, § 13.1(14).  Petitioner relies upon the fact that his direct appeal was pending at the time the OCCA decided *Anderson v. State*, 130 P.3d 273 (Okla. Crim. App. 2006), the case which required, as a matter of Oklahoma law, that juries be instructed on the 85% Rule.

In state post-conviction proceedings, the OCCA noted that Petitioner's trial was conducted prior to the *Anderson* decision.  Therefore, as a matter of state law, Petitioner was not entitled to an instruction on the 85% Rule.[18]  The OCCA further addressed whether Petitioner had demonstrated his appellate counsel was ineffective for failing to raise the 85% Rule issue on direct appeal.  The OCCA determined Petitioner failed to establish, pursuant to *Strickland*, that counsel was ineffective:

> Petitioner does not refute the District Court's finding that Petitioner's jury trial was held before *Anderson* was decided; that, even though *Anderson* was decided before Petitioner's direct appeal brief was filed, appellate counsel could not be ineffective because *Anderson* was stated to have prospective

---

[17]*See* Okla. Stat. tit. 21, §§ 12.1 and 13.1 (Supp. 2000).  Section 12.1 states: "A person committing a felony offense listed in [Section 13.1] on or after March 1, 2000, and convicted of the offense shall serve not less than eighty-five percent (85%) of the sentence of imprisonment imposed within the Department of Corrections."  Okla. Stat. tit. 21, § 12.1 (Supp. 2000).

[18]Nor was Petitioner entitled to such an instruction as a matter of federal constitutional law.  The Supreme Court has held that due process requires only that a jury be informed, either in a jury instruction or in arguments by counsel, as to parole ineligibility in capital cases in which future dangerousness has been placed in issue.  *Simmons v. South Carolina*, 512 U.S. 154, 156 (1994); *Ramdass v. Angelone*, 530 U.S. 156, 169 (2000) (*Simmons* applies only to instances where there is no possibility of parole as a legal, rather than a factual, matter).  Petitioner, therefore, has no federal constitutional right to the requested instruction.  *See Jones v. Mullin*, 175 Fed. Appx. 967 (10th Cir. April 11, 2006) (unpublished op.) (denying a certificate of appealability and rejecting petitioner's claim that the trial court's failure to provide a jury instruction regarding Oklahoma's parole eligibility requirements violated his due process rights).

> effect only; and that there was no evidence that Petitioner's jury requested any clarification regarding sentencing or that any failure to instruct on the 85% rule resulted in a miscarriage of justice or affected the outcome of Petitioner's sentencing.

*See* OCCA Post-Conviction Order at 6. In this habeas action, Petitioner has made no showing to demonstrate that the OCCA's determination of this issue is contrary to or an unreasonable application of *Strickland*.

Significantly, whether Petitioner was entitled to such an instruction is a matter of state law and the OCCA, for purposes of Petitioner's case, determined that under state law, *Anderson* had prospective effect only. The OCCA's interpretation of state law is controlling in this Court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court setting in habeas corpus."); *Johnson v. Mullin*, 505 F.3d 1128, 1141-1142 (10th Cir. 2007) (noting that "'it is not the province of a federal habeas court to reexamine state court determinations on state-law questions.'") (*quoting Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Moreover, Petitioner's counsel did raise, on direct appeal, a challenge to Petitioner's sentences as excessive but the OCCA rejected the claim. *See* OCCA Summary Opinion at 2. This holding further demonstrates that Petitioner was not prejudiced by counsel's failure to raise the 85% Rule issue on direct appeal. Petitioner has failed to demonstrate cause sufficient to overcome the procedural default of the claim raised in Ground Six of the Petition. His appellate counsel was not ineffective for failing to raise the substantive claim on direct appeal of his conviction.

In sum, Petitioner fails to demonstrate ineffective assistance of counsel and, therefore, has not shown sufficient cause to overcome procedural default of the claims raised in Grounds One, Two, Four and Six of the Petition. Habeas relief as to these grounds for relief should be denied.

### 3.      Ineffective Assistance of Counsel – Failure to Pursue Discovery Requests (Ground Five)

In Ground Five, Petitioner claims that prior to trial his counsel was ineffective for failing to effectively pursue discovery and identifies a series of motions filed with the trial court. He further claims this same counsel was ineffective for failing to raise the issues related to these motions on direct appeal of his conviction. Each of these motions is addressed in turn.

#### a.      Motion for Additional Discovery

Petitioner first contends his trial counsel filed a Motion for Additional Discovery on June 14, 2004. *See* OR at 92-101. According to Petitioner, the state district court docket reflects the motion was called for hearing on May 23, 2005, but that "[n]o result for this hearing was ever entered [o]n the Docket Sheet." *See* Petitioner's Brief at 29. Petitioner makes no other contentions in support of this claim. He does not identify with any specificity the discovery requested in the motion. He does not allege that discovery was withheld. His claim is wholly speculative. In his Reply, Petitioner acknowledges that the State furnished discovery on or about January 2, 2004, and supplemented the discovery thereafter. *See* Reply at 10. Petitioner contends, however, that the discovery did not include any statements made

by the victims to the prosecutors or their investigative staff. He also contends the discovery

did not include any psychological reports by State psychologists. In support of this claim,

Petitioner relies on the affidavit of an investigator, Mike Porter, hired by Petitioner for

purposes of his state post-conviction proceedings. In that affidavit, the investigator states

that B.H. told him she spoke with district attorneys on at least two occasions prior to trial and

that she had seen a counselor prior to trial for family counseling. The investigator further

states that L.R. also spoke with district attorneys prior to trial and had counseling.[19] The

investigator then states:

> I had been furnished copies of the State furnished discovery by Mac Oyler,
> which he advised had been obtained from the trial attorney, Stanley Monroe
> (containing over one hundred (100) pages). In reading the discovery, I did not
> find any report or statement from either Assistant District Attorney Russell
> Anderson or Steve Kunzweiller regarding their interviews with either B.H. or
> L.R. Also I did not find any statements or notes from Ann Donaco regarding
> statements given by B.H. or L.R. to these assistant district attorneys or given
> to her by B.H. or L.R.

*See* Porter Affidavit, ¶ 5.

Rejecting this claim in Petitioner's state post-conviction proceedings, the OCCA

found: "Petitioner has not refuted the District Court's finding that the discovery motions

involved the prosecutor's investigatory interviews with witnesses and that such information

can be covered by work product privilege. He has also not established that his discovery

motions would have been material to guilt or punishment." *See* OCCA Post-Conviction

---

[19]Petitioner does not attach the investigator's affidavit to his Brief in Support. The affidavit
is attached to Petitioner's Request for Expansion of Record and for Evidentiary Hearing [Doc. #5].
*See id.*, Exhibit 3, Affidavit of Mike Porter ("Porter Affidavit").

Order at 5. The OCCA then concluded that "Petitioner has not established that his counsel was ineffective with regard to this proposition." *Id.*, *citing Strickland*.

In this habeas action, Petitioner makes no additional showing regarding information he claims should have been pursued in discovery. And, as in the state post-conviction proceedings, here, Petitioner has not demonstrated that the information sought through discovery was not protected by the work product privilege as the OCCA noted, or that the information was material to guilt or punishment. Moreover, as discussed *supra* in relation to Petitioner's request for an evidentiary hearing, Petitioner has made no showing that "investigatory interviews" even exist in any recorded state. Significantly, Petitioner has not demonstrated what further efforts trial counsel should have undertaken regarding this purported information or that a reasonable probability exists that the results of the proceedings would have been different had counsel done so.

Petitioner has the burden of proof to overcome a strong presumption that counsel provided effective assistance. *Strickland*, 466 U.S. at 689; *see also Fox v. Ward*, 200 F.3d 1286, 1295 (10th Cir. 2000). Petitioner's speculative allegations, particularly when presented by counsel, are insufficient to establish his trial or appellate counsel was ineffective. *Compare United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (ruling that a pro se defendant's conclusory allegations were not sufficient to support an ineffective assistance of counsel claim without supporting averments); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even pro se plaintiffs must allege sufficient facts on which a recognized legal claim can be based, and that conclusory allegations will not

suffice).  Petitioner's claim that counsel should have further pursued the Motion for Additional Discovery should be denied.

### b.        Motion for Taint Hearing

Petitioner next claims ineffective assistance of counsel as related to the filing of a Motion for Taint Hearing on July 12, 2004.  *See* OR at 102-106.  According to Petitioner, the state district court docket shows that on September 30, 2004, the motion was reset if deemed necessary.  *See* Petitioner's Brief in Support at 29.  Petitioner makes no further allegation to support this claim.  In his Reply, Petitioner only emphasizes, in the abstract, the "suspect nature" of child testimony.  He does not address, however, why trial counsel's performance was deficient with respect to the presentation of the motion.  Nor does Petitioner address the manner in which the interviewing techniques in this case may have undermined the reliability of the victims' statements.  His bare-bones presentation of this claim is insufficient to demonstrate a Sixth Amendment violation.  As the OCCA found, Petitioner "has not established that his discovery motions would have been material to guilt or punishment" and, therefore that "his counsel was ineffective with regard to this proposition."  *See* OCCA Post-Conviction Order at 5.  Because trial counsel was not ineffective, Petitioner cannot demonstrate ineffective assistance of appellate counsel.  The OCCA's determination that counsel was not ineffective with respect to this issue is not contrary to or an unreasonable application of *Strickland*.

### c.     Motion for Disclosure of Confidential Records

Petitioner makes fleeting reference to a motion filed on behalf of himself and his co-defendant for disclosure of confidential records and states that the docket sheet reflects this hearing was held but no disclosure was ordered. *See* Petitioner's Brief at 29. This is the sum total of Petitioner's allegations regarding this motion. And, in his Reply, he makes no reference at all to this motion.

Respondent notes that Petitioner's co-defendant requested confidential records (presumably from the Department of Human Services, Child Welfare) but that Petitioner made no similar request. See OR, Docket, Case No. CF-2003-5656, at 8, Petition for Disclosure of Confidential Records (April 7, 2004). Respondent then states: "[a] hearing was held and it appears the trial court refused to release the records as the release is not indicated in the docket entry." *See* Response at 23-24. The Court's review of the docket indicates the hearing was set for May 21, 2004, and on that date, the hearing was stricken because the "court received no records." *See id*. at 8 (docket entry, May 21, 2004). A second hearing on this issue was set for April 28, 2005, and a hearing was conducted on that date. *See id*. at 13 (docket entry, April 6, 2005); and at 14 (docket entry, April 28, 2005).

Petitioner has failed to develop this claim of alleged ineffective assistance of counsel. As previously set forth, Petitioner bears the burden of proof to overcome a strong presumption that counsel provided effective assistance. Petitioner does not identify how counsel's performance was deficient or how the failure to pursue disclosure of the confidential records beyond the trial court's ruling prejudiced his defense. He does not even

identify the exact nature of the confidential records requested. Petitioner's vague and conclusory claim is insufficient to satisfy this burden.

### d.  Motion for Court-Ordered Evaluation

Next, Petitioner contends counsel was ineffective at trial and on direct appeal in relation to the filing of a Motion for Court-Ordered Evaluation. *See* OR at 107-112. Petitioner states that the docket sheet does not reflect this motion was ever heard and no evaluation of the victims ever took place. In his Reply, however, Petitioner acknowledges that the docket reflects the request was in fact denied by the district court on December 1, 2004. *See* Reply at 14; *see also* OR, Docket, Case No. CF-2003-5656 at 11 (docket entry, December 1, 2004 "request to have children examined denied").

Petitioner contends that once the state district court denied his motion, trial counsel should have pursued the issue by filing a writ of mandamus and/or writ of prohibition before the OCCA. Petitioner primarily relies upon the OCCA's opinion in *Hamill v. Powers*, 164 P.3d 1083 (Okla. Crim. App. 2007) as support for this claim.[20] Yet, the OCCA did review the claim in post-conviction proceedings and determined the claim lacked merit. The OCCA stated: "the mental state of the underage victims in this case did not bear directly on any essential element of the offenses, unlike the necessary evaluation of the complainant in *Hamill v. Powers*, 2007 OK CR 26, 164 P.3d 1083, who was alleged to be incapable of consenting to sexual relations due to mental retardation." *See* OCCA Post-Conviction Order

---

[20]The OCCA's *Hamill* decision, rendered on June 28, 2007, came after Petitioner's trial and direct appeal.

at 5. The OCCA then concluded Petitioner failed to demonstrate, pursuant to *Strickland*, that counsel was ineffective. *Id*. Petitioner has not shown the OCCA's determination is contrary to or an unreasonable application of *Strickland*. Moreover, Petitioner has not developed this claim by identifying what the evaluations might have proven at trial. Instead he makes entirely speculative assertions. *Compare Parker*, 394 F.3d at 1323 ("Parker has made no showing that a psychological examination [of the child victim] would have developed admissible evidence. Sheer conjecture on appeal is not enough to establish ineffective assistance of counsel."). Based on this record, the OCCA's adjudication of Petitioner's *Strickland* claim is entitled to AEDPA deference and the claim should be denied.

### 4. Ineffective Assistance of Counsel Claims (Ground Seven)

Petitioner raises the following substantive claims of ineffective assistance of trial counsel in Ground Seven of the Petition: (1) trial counsel should have objected to the admissibility of the testimony of State's witness Lora Zumwalt, a DHS caseworker; (2) trial counsel should have objected to the admissibility of the testimony of State's witness Jaime Vogt; and (3) trial counsel should have objected to statements by the prosecutor that "diluted" the beyond a reasonable doubt standard of proof. He also claims appellate counsel was ineffective for not raising these claims of ineffective assistance of trial counsel on direct appeal.

The OCCA denied the ineffective assistance of counsel claims raised in Ground Seven on the merits, applying *Strickland*. Therefore, Petitioner is entitled to habeas relief only if

the OCCA's determination of his ineffective assistance of counsel claims is contrary to or an unreasonable application of *Strickland*.

<b>a.    Failure to Challenge the Admissibility of Lora Zumwalt's Testimony</b>

The State called as a witness, Lora Zumwalt, an employee of the Oklahoma Department of Human Services (DHS) who investigated the allegations made against Petitioner. Petitioner claims his trial counsel was ineffective for not objecting to the admissibility of her testimony. In support of this claim Petitioner contends her testimony was tantamount to advising the jury that Petitioner was guilty, thereby invading the province of the jury. Petitioner further contends her testimony was not relevant. In his Reply, Petitioner identifies the following as "objectionable characteristics" of Zumwalt's testimony: (1) Zumwalt developed concerns about Petitioner; (2) as a result of Zumwalt's interview with the victim, she developed a safety plan which required removing the victim from her home; (3) delayed reporting of abuse is not unusual. *See* Reply at 3-4. Petitioner claims Zumwalt's testimony was prejudicial because it "unequivocally told the jury that the alleged victims were believed by an 'expert' in the field." *See id*. at 5.

Ms. Zumwalt testified on behalf of the State. She identified herself as a child abuse investigator for DHS. Tr. Vol. III at 598. She testified as to the training required for her job, the length of her employment with DHS (approximately four years at the time of trial) and the investigation process utilized by DHS. Tr. Vol. III at 599-604. She gave testimony about the interview process used with children. *Id*. at 604-605, 607-608. Ms. Zumwalt then

described the particular investigation involving the victims' allegations against Petitioner. *Id*. at 609-613; cont'd at Tr. Vol. IV at 617-644. She testified about her interview of B.H. in the counselor's office at the school on October 6, 2003. Tr. Vol. IV at 618-632. She testified that in the course of her interview, she developed some concern for the safety of B.H. Tr. Vol. IV at 621. She also testified about the decision to place B.H. and L.R. in a shelter. Tr. Vol. IV at 632-635. Ms. Zumwalt also provided testimony about why children may not disclose abuse for long periods of time. *Id*. at 637-639.

Petitioner fails to demonstrate counsel's performance was deficient, and the trial record belies any such allegation. In the course of Zumwalt's testimony, the State attempted to elicit that B.H.'s allegations against Petitioner in her statements to the police were consistent with statements B.H. provided to Ms. Zumwalt. Defense counsel objected to this testimony and the objection was sustained. *Id*. at 625-628, 639-644. Defense counsel also objected to the prosecutor's question as to whether Petitioner was identified as "a person who may have perpetrated on either [B.H.] or her sister, [L.M.]" and the objection was sustained. *Id*. at 630. Defense counsel followed with a thorough cross-examination of Ms. Zumwalt. *Id*. at 644-666. In an effort to undermine B.H.'s credibility, he elicited on cross-examination that B.H. had alleged at least ten incidents of abuse. *Id.* at 655-656. He also elicited that L.R. was placed in the shelter even though she had denied any improper conduct by Petitioner because this was standard DHS protocol. *Id*. at 662-663. In addition, he elicited that DHS does not initiate criminal prosecutions but only shares information with law enforcement agencies. *Id*. at 663. Finally, defense counsel elicited from Ms. Zumwalt that

an earlier DHS investigation had taken place involving L.R. and allegations against Petitioner and that no services were recommended at that time. *Id*. at 678. This testimony advanced counsel's defense theory that the victims had fabricated the allegations of abuse.

Petitioner makes no effort to demonstrate the testimony would have been excluded under Oklahoma evidentiary rules. Similarly, Petitioner fails to demonstrate that Ms. Zumwalt's testimony amounted to improper vouching of the victims' credibility. In *Parker*, the Tenth Circuit addressed a similar claim challenging the testimony of a DHS investigator concerning his investigation of allegations of sexual abuse. The Tenth Circuit rejected the petitioner's claim that the testimony was improper. In that case, the investigator testified: "[a]fter I completed the investigation I ruled it confirmed sexual abuse . . . and turned it over to the District Attorney's Office." *Parker*, 394 F.3d at 1312. The Tenth Circuit stated the following with respect to this testimony:

> This statement was made at the end of a lengthy direct examination during which Lovett described his interview with the child. While it concludes that the child made an allegation of abuse sufficient to refer the case to the district attorney for further evaluation, this is nothing more than an acknowledgment that Lovett thought there was sufficient probable cause that a crime had been committed. But that inference is true of every case in which the police or state investigators refer a matter to the prosecution for evaluation. Testimony that probable cause existed to charge the defendant with sexual abuse alone does not improperly vouch for the credibility of a particular witness or piece of evidence.

*Id*. at 1312-1313. Petitioner's bases for challenging Zumwalt's testimony are less compelling than those presented in *Parker*. Ms. Zumwalt never gave an opinion as to whether the victims had been sexually abused. Nor did Ms. Zumwalt express an opinion about the

victims' propensity to lie or tell the truth. Instead, she only described the interview with B.H. and standard DHS protocol in response to the information gathered in the interview.

For all these reasons, counsel did not render ineffective assistance in failing to challenge Ms. Zumwalt's testimony on the grounds identified by Petitioner or for failing to raise this issue on direct appeal. To the contrary, the record shows defense counsel skillfully made use of her testimony in furthering his theory of the case. Petitioner has failed to demonstrate that the OCCA unreasonably applied *Strickland* in rejecting this allegation of ineffective assistance of counsel. His claim should be denied.

### b. Failure to Challenge the Admissibility of Jaime Vogt's Testimony

Petitioner also claims that at trial, counsel should have objected to the admissibility of testimony provided by State's witness Jaime Vogt and should have further raised this issue on direct appeal. After extensive voir dire by defense counsel, Ms. Vogt was allowed to testify on behalf of the State as an expert in the general field of sexual abuse and forensic interviewing. Tr. Vol. V at 977.

While an employee of Tulsa County's Child Abuse Network, Ms. Vogt conducted a forensic interview of B.H. in October 2003. Tr. Vol. V at 982. Ms. Vogt described the protocol used in conducting a forensic interview. *Id*. at 956-957. Ms. Vogt explained that as a forensic interviewer her "client" is the "court system." She further explained that "I am not going to determine whether a child is telling the truth or not, but ask enough questions that will allow the child to demonstrate their competency." *Id*. at 986; *see also* 987.

She did, however, testify in detail about the general interview process, the need to watch for signs of coaching or other "red flags" during that process, the need to shut down an interview if too many red flags arise, the significance attached to a "show of emotion" during an interview, and circumstances involving recanted statements. Tr. Vol. V at 985-991. Ms. Vogt also testified about why children may wait for "days, months, even years" before reporting abuse. Tr. Vol. V at 977-979.

Specifically, Petitioner challenges Ms. Vogt's testimony regarding why victims of sexual abuse delay reporting that abuse. Additionally, Petitioner challenges Ms. Vogt's testimony that if a victim's statement is "inconsistent or inaccurate" she ends the interview with the victim. Petitioner contends because Ms. Vogt did not end her interview with B.H, Ms. Vogt was vouching for the credibility of B.H. In *Parker*, the Tenth Circuit determined direct testimony by an expert that the child victim had been sexually abused did not constitute impermissible vouching. *See Parker*, 394 F.3d at 1311. Petitioner's claim of impermissible vouching is far more attenuated than the direct testimony allowed in *Parker*.

Moreover, in the course of testifying about "red flags," defense counsel lodged an objection on grounds that Ms. Vogt was being asked to indirectly testify about credibility and the objection was sustained. *Id*. at 988. In addition, the record demonstrates defense counsel closely monitored Ms. Vogt's testimony, made appropriate objections to improper testimony,

asked detailed voir dire questions about her qualifications as an expert, challenged those qualifications and conducted a thorough cross-examination. Tr. Vol. V at 994-1006.[21]

As with Ms. Zumwalt's testimony, Petitioner fails to demonstrate, as an evidentiary matter, how Ms. Vogt's testimony would have been excluded under the Oklahoma evidence code. In sum, Petitioner fails to demonstrate counsel's performance was deficient or that but for counsel's failure to move for the exclusion of her testimony the results of the proceedings would have been different. As set forth above, the jury was made aware of the role Ms. Vogt played in the investigation process and specifically that her role was not to determine the credibility of the victims. Under these circumstances, the OCCA's denial of this claim is not contrary to or an unreasonable application of *Strickland*.

### c. Counsel's Failure to Object to Statements by the Prosecutor Regarding the Standard of Proof Beyond a Reasonable Doubt

Petitioner next claims that at trial, counsel should have objected to statements the prosecutor made during voir dire that he contends "diluted" the standard of proof beyond a reasonable doubt. He claims counsel should have raised this issue on direct appeal. Petitioner specifically relies on *In re Winship*, 397 U.S. 358 (1970) to support this claim.[22]

---

[21]Moreover, the record demonstrates trial counsel raised a challenge to Ms. Vogt's testimony in requesting a motion for new trial and on direct appeal. *See* Tr. Vol. VIII at 1414-1415; Petition, Exhibit 3, Opening Brief of Appellant at 30-34. Although not framed in identical terms as the issue raised here, on direct appeal counsel also challenged Ms. Vogt's opinion testimony as prejudicial, depriving Petitioner of his right to a fair trial.

[22]In *In re Winship*, the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.*, 397 U.S. at 364.

Petitioner contends a violation of *Winship* occurred in three ways. Petitioner contends the prosecutor diluted the reasonable doubt standard because he (1) referenced the burden of proof in a civil proceeding and compared that burden to the reasonable doubt standard: (2) advised the jury he could not define reasonable doubt for them but stated further that reasonable doubt was not the same as "beyond a shadow of a doubt" or "beyond any doubt" and (3) compared the jury's decision-making in the criminal proceedings to decision-making about every-day matters such as which house to buy or which car to buy. Tr. Vol. I at 140-151.

Petitioner must demonstrate that but for counsel's deficient performance (here, defense counsel's failure to object to the comments made during voir dire) a reasonable probability exists that the results of the proceedings would have been different.[23] The record shows that the trial court instructed the jury as to the applicable burden of proof at the commencement of voir dire stating: "the defendant is presumed innocent of a crime unless after consideration of all the evidence, [the jury is] convinced of his guilt beyond a reasonable doubt." Tr. Vol. I at 38. The trial court also advised the jury that the State must prove each element of the charged crime beyond a reasonable doubt. *Id*. And, during defense counsel's voir dire, he repeated the presumption of innocence, and the State's burden to prove the defendant's guilt beyond a reasonable doubt. Tr. Vol. I at 200. There is no

---

[23]Petitioner analyzes this claim as one of prosecutorial misconduct. The claim, as presented, however, is a claim of ineffective assistance of counsel and, therefore, the *Strickland* standard governs analysis of the claim.

evidence in the record that the jury did not understand the proper standard of proof or was confused by the prosecutor's voir dire. To the contrary, responses from jurors indicated their understanding of the burden. *See, e.g., id*. at 198, 200-203. Moreover, following presentation of the evidence and prior to deliberations, the jury was properly instructed about the presumption of innocence and the State's burden to prove each element of the charged offenses beyond a reasonable doubt. *See* OR at 135, Instruction No. 4, OUJI-CR 10-4.

Based on this record, Petitioner has failed to demonstrate that counsel's failure to object to the prosecutor's statements during voir dire prejudiced him under the *Strickland* standard. The trial court instructed the jury at the beginning of voir dire regarding the burden of proof, and the jury was properly instructed again about that burden of proof prior to their deliberations. Accordingly, counsel was not ineffective for failing to object to the prosecutor's comments during voir dire or to raise this issue on direct appeal of his conviction. The OCCA's determination of this issue is not contrary to or an unreasonable application of *Strickland* and this claim should be denied.

In summary, Petitioner has failed to demonstrate that either at trial or on direct appeal, his counsel was ineffective with respect to the issues raised in Ground Seven of the Petition. The OCCA's adjudication of the claims raised in Ground Seven is entitled to AEDPA deference, and Ground Seven should be denied.

## V.      Petitioner's Request for Expansion of the Record and for Evidentiary Hearing

Petitioner has separately filed a Request for Expansion of the Record and for Evidentiary Hearing [Doc. #5] and as noted, *see infra,* footnote 3, has submitted in support

41

of this request the Post-Conviction Record [Doc. #6]. Petitioner requests an evidentiary hearing to address alleged ineffective assistance of counsel and prosecutorial misconduct. With respect to ineffective assistance of trial counsel, Petitioner requests an evidentiary hearing on the following issues: (1) failure to discover/utilize evidence; and (2) failure to properly present available evidence and/or failure to raise issues on appeal. He identifies these issues as issues raised in Ground Seven of the Petition. With respect to prosecutorial misconduct, Petitioner requests an evidentiary hearing due to the prosecutor's alleged failure to furnish properly discoverable evidence which Petitioner identifies as statements of the victims during interviews with the prosecutor(s) that could have been used as impeachment evidence. Petitioner identifies this issue as the issue raised in Ground Five of the Petition. He further seeks an evidentiary hearing contending the prosecutor knowingly presented false testimony and made use of evidentiary harpoons. He identifies these issues as the issues raised in Ground Two of the Petition.

In support of his request for an evidentiary hearing, Petitioner attaches the following affidavits: (1) Affidavit of Petitioner's Trial and Appellate Attorney Stanley Monroe; (2) Affidavit of Petitioner Michael Pat Thompson; (3) Affidavit of Petitioner's Post-Conviction Investigator, Mike Porter; and (4) Affidavit of Petitioner's Attorney Mac Oyler. *See* Request, Exhibits 1-4, respectively. Petitioner filed a verbatim request for an evidentiary hearing and attached these same affidavits during the pendency of his state post-conviction proceedings in both the Tulsa County District Court and before the OCCA. His requests were denied.

Under the AEDPA, a federal habeas court's ability to grant an evidentiary hearing is restricted to very limited circumstances. *See* 28 U.S.C. § 2254(e)(2). Where a petitioner has failed to develop the factual basis of a claim in the state court proceedings, section 2254(e)(2) provides that the court may not conduct an evidentiary hearing unless the applicant can satisfy one of the two exceptions listed in § 2254(e)(2)(A) and (B).[24] If, however, the habeas petitioner did not fail to develop the factual basis of a claim in the state court proceedings, then § 2254(e)(2) is not applicable. In those circumstances, pre-AEDPA standards govern whether an evidentiary hearing is warranted. *See Bryan v. Mullin*, 335 F.3d 1207, 1214 (10th Cir. 2003) (en banc). The pre-AEDPA standard requires a petitioner to show that his

---

[24]Section 2254(e)(2) reads in its entirety:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-

(A) the claim relies on-
(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). But a "failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *William v. Taylor*, 529 U.S. 420, 432 (2000).

allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief. *See, e.g., Hammon v. Ward*, 466 F.3d 919, 927 (10th Cir. 2006).

As noted, Petitioner made an identical request for an evidentiary hearing before the OCCA and relied on the same evidence submitted here. The Court assumes, therefore, that Petitioner did not fail to develop the factual basis of his claims in the state court proceedings and applies the pre-AEDPA standard to determine whether an evidentiary hearing is warranted for purposes of federal habeas review.

### A. Ineffective Assistance of Trial and Appellate Counsel

The Court has reviewed Petitioner's claims that counsel was ineffective both at trial and on direct appeal as set forth in Ground Seven of the Petition. Petitioner relies on some or all of these same claims in requesting an evidentiary hearing. The only evidence Petitioner offers is an affidavit from Stanley Monroe, counsel who represented Petitioner at both trial and on direct appeal. As noted, this evidence is not new evidence, as Petitioner submitted this same affidavit in support of his post-conviction proceedings. In that affidavit, counsel states:

> I have examined Mr. Thompson's propositions to be raised in his Application for Post-Conviction Relief. I did not consciously make decisions to ignore or exclude any of the issues and arguments presented therein, at trial or on direct appeal, based upon strategy.

*See* Petitioner's Request, Exhibit 1, Affidavit of Stanley Monroe, ¶ 5. Counsel's statement, *at best*, suggests that if any of his conduct constitutes deficient performance, that conduct was not intentional or consciously done as part of a strategy to create error. Notwithstanding

the statement, "[c]ounsel's decisions are presumed to represent sound trial strategy; for counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Barkell v. Crouse*, 468 F.3d 684, 689 (10th Cir. 2006) (citation and internal quotations omitted). Moreover, as set forth above in the analysis of Ground Seven of the Petition, regardless of counsel's deficient performance, Petitioner's ineffective assistance claims fail on the prejudice prong of the *Strickland* analysis. *See Young v. Sirmons*, 551 F.3d 942, 970 (10th Cir. 2008) (where petitioner seeks evidentiary hearing on grounds of ineffective assistance of counsel, pre-AEDPA standard governing right to evidentiary hearing works in conjunction with *Strickland* and, therefore, petitioner must demonstrate *Strickland* prejudice before establishing his right to an evidentiary hearing). As such, Petitioner is not entitled to an evidentiary hearing.

## B.     Alleged Prosecutorial Misconduct

Petitioner also seeks an evidentiary hearing on grounds of alleged prosecutorial misconduct, a claim raised in Ground Two of the Petition. He contends the prosecutor knowingly introduced false testimony and references B.H's testimony, discussed in relation to the claim raised in Ground Two. Petitioner has not demonstrated that accepting this allegation as true -- *i.e.,* that the prosecutor knowingly introduced false testimony that B.H. told her boyfriend about an incident where Petitioner had molested her approximately three years after the incident occurred – and not contravened by the existing factual record, Petitioner would be entitled to habeas relief. Even if B.H. lied about telling her boyfriend she was molested, other evidence sufficiently corroborated her testimony, as addressed in

relation to Ground Three of the Petition where Petitioner challenged the sufficiency of the evidence to support his convictions.

Petitioner also contends prosecutorial misconduct occurred because the prosecutor interviewed the victims on more than one occasion but never provided statements from these victims to defense counsel. In support, Petitioner submits the affidavit of his post-conviction investigator, Mike Porter. Mr. Porter states that he conducted telephone interviews of the two victims in 2008, after Petitioner's conviction had been affirmed on direct appeal by the OCCA. Mr. Porter then describes in detail the alleged discussion he had with the victims about their meetings with the district attorneys, DHS counselors and others involved in the investigation of the charges. Mr. Porter's affidavit consists of hearsay statements. Nonetheless, even if the Court were to consider these discussions as described in Mr. Porter's affidavit, there is no evidence that any of the meetings between state prosecutors, investigators or counselors resulted in written or recorded statements from the victims. Petitioner's insistence that the prosecutor withheld material evidence is groundless.

With respect to Petitioner's alleged right to treatment records from the counselors with whom the victims met, he has made no demonstration as to the efforts he took to obtain these records during the trial, on direct appeal or during state post-conviction proceedings. Nor has Petitioner demonstrated what these counseling records might show. *Compare Barkell*, 468 F.3d at 693, 698 (remanding for evidentiary hearing where petitioner included evidence of specific efforts to obtain evidence related to victim's counseling history and included copies of certain counseling records demonstrating victim's tendency to lie). Based on what

has been presented to this Court, therefore, Petitioner has failed to demonstrate his right to an evidentiary hearing.

Accordingly, Petitioner's Request for Expansion of the Record and for Evidentiary Hearing should be denied.

## RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied. It is further recommended that Petitioner's Request for Expansion of the Record and for Evidentiary Hearing [Doc. #5] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of the District Court by May __21st__, 2010. *See* Local Civil Rule 72.1. Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all matters referred by the District Judge in this case and terminates the referral.

DATED this __30th__ day of April, 2010.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE